1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

ESTATE OF DEANNA DAVIS, by and
through Whitney Bolton, Personal
representative, WHITNEY BOLTON, an
individual, and JANE HARRELL, an
individual,

Plaintiffs,

v.

KING COUNTY; LISA TOWNSEND-
VICKERS, an individual; IRINA KING, an
individual; KRYSTAL POPE, an individual;
GABRIELA DIEBATE, an individual;
CAROLYN CLARK, an individual; DAVID
VDOVIN, an individual; RYAN SCOTT, an
individual; NICOLE McBRIDE, an individual;
THI TRAN, an individual; ALAIN SANTOS,
an individual; F/N/U SABLAN, an individual;
ROBERT HERBERLING, an individual;
TODD STUBBS, an individual; DAVID
HARDT, an individual; HANNAH NAM, an
individual; TIM MEAD, an individual;
CAMERON BLOOD, an individual; PAUL
HENG, an individual; BRANDON
HOLLINGER, an individual; ROY SPRAGUE,
an individual; GREGORY MAI, an individual;
FINTAN RICHMOND, an individual; TRAVIA
NUA, an individual; ERIC PUTNAM, an
individual; CHRISTOPHER GINER, an
individual; ELENE DULOGLO, an individual;
THU NGUYEN, an individual; JASON
EDMOND, an individual; ROB BAJRA, an
individual; DENNIS ECHOLS, an individual,

Defendants.

No.

COMPLAINT

JURY DEMAND REQUESTED

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT - 1

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

## I.    NATURE OF THE CASE

2      1.1    Death by observation. Ms. DeAnna Davis died because King County Correctional

3 Facility deputies and medical staff left Ms. Davis to suffer despite clear and documented warning

4 signs that she was in distress and unable to advocate for herself. Ms. Davis was naked, lying on

5 the floor, allegedly refusing medications she could not comprehend she needed due to a lack of

6 competency. Ms. Davis's bedding was soiled and wet. For three days, she visibly deteriorated with

7 known persistent "severe diarrhea" and vomiting. Everyone noticed. No one acted. Ms. Davis died

8 alone, sick, cold, and dehumanized.

9      1.2    King County Correctional Facility deputies and medical staff knew that DeAnna

10 Davis needed medical and/or mental health treatment. She had been booked in the facility at least

11 29 times since 2018. Her jail records were filled with confirmed mental health disorders and

12 prescription medication for psychosis and manic behaviors.  King County Correctional Facility

13 deputies and medical staff ignored her deteriorating condition even though they knew she

14 presented to the facility with hypokalemia, severe mental health issues, and unremedied vomiting

15 and diarrhea.  Instead of summoning appropriate medical care, King County Correctional Facility

16 deputies allowed Ms. Davis to decline for days.  Nursing staff failed to take Ms. Davis's vitals,

17 despite her booking orders, after the *first day* she entered the jail's custody. They wholly failed to

18 treat her illness and appropriately escalate her care to a midlevel provider or physician.

19      1.3    On March 21, 2023, after days of misery, Ms. Davis passed away from acute

20 dehydration (from untreated diarrhea and vomiting) and electrolyte imbalance from her

21 hypokalemia, triggering Arrhythmogenic Right Ventricular Dysplasia (ARVD). Ms. Davis was

22 only 58 years old. She is survived by her two daughters, Whitney Bolton and Jane Harrell.

23      1.4    By failing to provide Ms. Davis with adequate medical care and mental health care,

24 King County and the individually named defendants are liable for Ms. Davis's injuries and

25 untimely death.

26 ///

27 ///

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

## II.    **PARTIES**

2.1    The Estate of DeAnna Davis ("Plaintiff Estate") is a probate action arising from the death of DeAnna Davis.  Plaintiff Estate is admitted to administration by the Superior Court of the State of Washington for the County of King, case number 25-4-08543-8 SEA. The Estate's claims are brought by its duly appoint Personal Representative, Whitney Bolton, a resident of Puyallup, Washington, Pierce County.

2.2    Plaintiff Whitney Bolton, daughter of the deceased, is a citizen of the State of Washington and a resident of the City of Puyallup in Pierce County, Washington.

2.3    Plaintiff Jane Harrell, daughter of the deceased, is a citizen of the State of Oregon and a resident of the City of Portland in Multnomah County, Oregon.

2.4    Defendant King County is a local government organized under Washington state law. Under its authority, the King County Sheriff's Department operates and manages the King County Correctional Facility, located at 500 5th Ave, Seattle, WA 98104. Defendant King County is responsible for the Jail Health Services staff, employees, and/or agents who provide medical care and mental health care to the incarcerated individuals housed at the King County Correctional Facility.

2.5    Defendant Lisa Townsend-Vickers is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant Townsend-Vickers was working within the scope of her employment as a registered nurse.

2.6    Defendant Irina King is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant King was working within the scope of her employment as a medical doctor.

2.7    Defendant Krystal Pope is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant King was working within the scope of her employment as a mental health provider (PhD).

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

2.8     Defendant Gabriela Diebate is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant Diebate was working within the scope of her employment as a registered nurse.

2.9     Defendant Carolyn Clark is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant Clark was working within the scope of her employment as a registered nurse.

2.10    Defendant David Vdovin is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant Vdovin was working within the scope of his employment as a registered nurse.

2.11    Defendant Ryan Scott is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant Scott was working within the scope of his employment as a licensed mental health counselor (LMHC).

2.12    Defendant Nicole McBride is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant McBride was working within the scope of her employment as a registered nurse.

2.13    Defendant Thi Tran is an individual person, and upon information and belief is employed by King County through Jail Health Services. At the time of the allegations set forth herein, Defendant Tran was working within the scope of her employment as a registered nurse.

2.14    Defendant Alain Santos is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Santos was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.15    Defendant F/N/U (first name unknown) Sablan is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant

COMPLAINT - 4

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    Sablan was working within the scope of his official duties as Corrections Deputy at King County

2    Correctional Facility and was acting under color of state law.

3        2.16    Defendant Robert Herberling is an individual person, and is employed by the King

4    County Sheriff's Department. At the time of the incidents, Defendant Herberling was working

5    within the scope of his official duties as Corrections Deputy at King County Correctional Facility

6    and was acting under color of state law.

7        2.17    Defendant Todd Stubbs is an individual person, and is employed by the King

8    County Sheriff's Department. At the time of the incidents, Defendant Stubbs was working within

9    the scope of his official duties as Corrections Deputy at King County Correctional Facility and

10   was acting under color of state law.

11       2.18    Defendant David Hardt is an individual person, and is employed by the King

12   County Sheriff's Department. At the time of the incidents, Defendant Hardt was working within

13   the scope of his official duties as Corrections Deputy at King County Correctional Facility and

14   was acting under color of state law.

15       2.19    Defendant Hannah Nam is an individual person, and is employed by the King

16   County Sheriff's Department. At the time of the incidents, Defendant Nam was working within

17   the scope of her official duties as Corrections Deputy at King County Correctional Facility and

18   was acting under color of state law.

19       2.20    Defendant Tim Mead is an individual person, and is employed by the King County

20   Sheriff's Department. At the time of the incidents, Defendant Mead was working within the scope

21   of his official duties as Corrections Deputy at King County Correctional Facility and was acting

22   under color of state law.

23       2.21    Defendant Cameron Blood is an individual person, and is employed by the King

24   County Sheriff's Department. At the time of the incidents, Defendant Blood was working within

25   the scope of his official duties as Corrections Deputy at King County Correctional Facility and

26   was acting under color of state law.

27

COMPLAINT - 5

2.22     Defendant Paul Heng is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Heng was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.23     Defendant Brandon Hollinger is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Hollinger was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.24     Defendant Roy Sprague is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Sprague was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.25     Defendant Gregory Mai is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Mai was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.26     Defendant Fintan Richmond is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Richmond was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.27     Defendant Travia Nua is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Nua was working within the scope of her official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.28     Defendant Eric Putnam is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Putnam was working within

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.29    Defendant Christopher Giner is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Giner was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.30    Defendant Elene Duloglo is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Duloglo was working within the scope of her official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.31    Defendant Thu Nguyen is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Nguyen was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.32    Defendant Jason Edmond is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Edmond was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.33    Defendant Rob Bajra is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Bajra was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

2.34    Defendant Dennis Echols is an individual person, and is employed by the King County Sheriff's Department. At the time of the incidents, Defendant Echols was working within the scope of his official duties as Corrections Deputy at King County Correctional Facility and was acting under color of state law.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

## III.    JURISDICTION AND VENUE

2    3.1    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42

3    U.S.C. § 1983.

4    3.2    Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C.

5    §1391 because at least some of the Defendants reside in this judicial district and because the events

6    and omissions giving rise to the claims alleged here occurred within the Western District of

7    Washington.

8    3.3    On January 27, 2026, Plaintiff Estate, Whitney Bolton, and Jane Harrell presented

9    Defendant King County with a Claim for Damages sustained as a result of the incidents described

10    in this Complaint, and apprising the County of the substance of the claims asserted herein, pursuant

11    to RCW 4.96.020.

12    3.4    60 days have not yet elapsed since Plaintiffs presented their Claim for Damages on

13    Defendant King County.  Should King County not respond after 60 days from the service date,

14    Plaintiff Estate, Whitney Bolton, and Jane Harrell will have exhausted all administrative remedies.

15    Plaintiffs intend to amend this Complaint to add the state law causes of action.

16    3.5    This action is timely filed within the statute of limitations of each cause of action

17    pled herein.

## IV.    FACTS

### Ms. DeAnna Davis

20    4.1    Ms. DeAnna Davis was a beloved mother to her daughters, Plaintiffs Whitney

21    Bolton and Jane Harrell.



22

23

24

25

26

27

COMPLAINT - 8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.2     Growing up, Ms. Bolton and Ms. Harrell had a vibrant, intelligent, present, stable, and loving mother. Ms. Davis took extra efforts to make holidays and birthdays a special occasion for her family. She taught her daughters kindness, empathy, resilience, and how to love.

4.3     Ms. Davis earned her bachelor's degree in business from the University of Puget Sound. She worked as an administrative assistant and went to work put together in nice suits with her hair perfectly curled. Ms. Davis was beautiful, inside and out, and well-liked by everyone who knew her.

4.4     Ms. Davis's mental health issues began after her husband, Ms. Bolton's father, passed away.

4.5     Although Ms. Davis struggled with her mental health, she never stopped loving her daughters.

***March 17, 2023: Admission to Harborview Medical Center for Apparent Mental Health Issues***

4.6     On March 17, 2023, Seattle Police Department officers arrested Ms. Davis for alleged trespass violation and theft from Lowe's department store. A witness reported Ms. Davis as being "mentally unstable" and likely intoxicated or high.

4.7     During her arrest and transport to jail, Ms. Davis continuously yelled incomprehensibly, and acted erratically.

4.8     King County Correctional Facility declined to book Ms. Davis after she disclosed a potential sexual assault and presented with a skin infection.

4.9     Seattle Police Department officers transported Ms. Davis to Harborview Medical Center for clearance to book Ms. Davis into the jail.

4.10     At Harborview Medical Center, Ms. Davis presented as disheveled, uncooperative, yelling, screaming, and disorganized.

4.11     Ms. Davis had documented mental health illnesses including chronic post-traumatic stress disorder (PTSD), unspecified psychotic disorder, bipolar disorder, schizoaffective disorder, unspecified psychosis, and stimulant use disorder. Past medical history included longstanding history of psychosis. Previous hospitalizations listed prescription medications for psychosis and

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

behavioral conditions (haloperidol decanoate) and the manic phase of bipolar disorder (divalproex).

4.12    The SANE nurse described Ms. Davis as "very disorganized" and not competent to consent to a Sexual Assault Nurse Examination (SANE exam):

> As for her potential assault, at this time patient is very disorganized and I do not think is consentable for a SANE exam, so will reassess. We will give her a dose of Haldol and midazolam for acute agitation. Will obtain basic screening labs and ankle x-ray.
>
> 4:30pm pt signed out to Dr. Bakhoum, pending labs, XR, reassessment and ultimate disposition.

4.13    Harborview Medical Center's lab work revealed that Ms. Davis had hypokalemia (low potassium). Harborview medical staff repleted her potassium levels with a potassium chloride tablet, suspected substance abuse for her diagnosed agitation, and then discharged Ms. Davis back to King County Correctional Facility.

### March 18, 2025: Booking into King County Correctional Facility's Psychiatric Unit

4.14    On March 18, 2023, Ms. Davis was booked into King County Correctional Facility. Jail Health Services clinicians allegedly reviewed Ms. Davis's emergency department information, past jail records, medication records, and confirmed mental health diagnoses.

4.15    Ms. Davis had been incarcerated at KCCF at least 29 times since 2018. She is typically housed in the "yellow unit" (psychiatric housing) until stabilized on medication.

4.16    King County Correctional Facility records from previous incarcerations stemming back to 2016 documented:

- chronic bipolar disorder,
- chronic bipolar affective disorder ("currently manic"),
- chronic post-traumatic stress disorder (PTSD),
- mental health problems,
- chronic psychosis,
- substance use disorder (methamphetamine and crack cocaine); and
- "hearing voices, history of psychiatric hospitalization, history of psychiatric treatment, history of treatment for substance use disorder."

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.17    Current or "active" medications, which she had been given during previous stays at King County Correctional Facility, were benztropine, divalproex, and haloperidol.

4.18    Because of Ms. Davis's significant history at the jail, severe mental health issues, and current presentation of "active symptoms of major mental illness," King County Correctional Facility staff housed her in the psychiatric unit ("yellow" for "severe impairment"):

---

**IMMEDIATE TRANSFER/HOUSING ALERT (571)**
All 571 immediate transfer documentation must be completed before the inmate transfer

**Name:** Deanna Marie Davis   **B/A:** 2023-018935   **Date:** 03/17/23   **Time:** 11:57 PM PDT
**Current Location:** KCCF:ITR-BOOKING   **Jail Bed:** KCCF:ITR-BOOKING

**I request the following housing accommodations:**

| Medical Housing | Psychiatric Housing |
|---|---|
| ☐ Medical group (7-South) | ☐ Red (Imminent Risk of Self-Harm) |
| ☐ Infirmary | **Criteria:** |
| ☐ Infection Precaution - Isolation | ☐ Expressed intent and plan for suicide or self-harm |
|    ☐ Contact  ☐ Airborne  ☐ Droplet | ☐ Command hallucinations or delusions of self-harm |
| **Reason:** | ☐ Chronic past self-harm thoughts/behavior, w/current hopelessness |
| ☐ Detox  ☐ Diabetic  ☐ Pregnant | ☐ Lethal/Sub-lethal attempt <= 6 months with hospital level of care |
| ☐ Seizure  ☐ Opioid Withdrawal | ☐ Recent major loss with extreme distress and inability to cope |
| ☐ Hardware  ☐ Mobility | |
| ☐ Vision/Hearing Impairment | |
| ☐ MAT | |
| ☐ Other: | |

| | **Criteria for Alternate Psychiatric Housing** |
|---|---|
| ☐ Lower Bunk     x___Days   Until Release | ☒ Active Symptoms of Major Mental Illness |
| ☐ Lower Tier     x___Days   Until Release | ☒ **Yellow** (Severe Impairment) |
| ☐ Lower Bunk/Tie   Until Release | ☐ **Green** (Moderate Impairment) |

| **Other Notable Behavior Related to Housing Determination** | |
|---|---|
| ☐ Not following staff directives | ☒ Disorganized/inappropriate affect |
| ☐ Unable to care for self | ☐ Assaultive/threats to staff |
| ☐ Self-harm/injurious behaviors | ☒ Other: minimally cooperative in ITR |

---

4.19    At the time of booking, Ms. Davis is considered a "special needs" inmate—someone who requires extra monitoring and care given her current mental and physical state. Extra face-to-face monitoring is even more important when the cell is not equipped with in-cell-cameras. This means coordination of care between the sworn staff and medical staff. This never happened.

4.20    Ms. Davis's vitals were on the low end of normal, which should have triggered monitoring. King County Correctional Facility staff did not record her weight.

COMPLAINT - 11

4.21     Defendant Lisa Townsend-Vickers noted "hypokalemia" from the Harborview Medical Center records. Yet, in her assessment and plan, no monitoring of potassium levels or a repletion plan were included:

> **ASSESSMENT:**
> ITR Baseline
> Bipolar/PTSD
> C/O Sexual Assault
> Uncoop in ITR
> Non-medication compliant
> Hx psych housing
>
> **PLAN:**
> Kite PRN
> Will refer chart to Psych Provider to review Haldol orders
> 571 to Psych housing
>
> **1. Routine general medical examination at health care facility**
> – PES EVALUATION; Future

4.22     Defendant Townsend-Vickers noted Haldol had been administered to Ms. Davis at Harborview Medical Center, and that she "was non-compliant with her meds."

4.23     Despite Ms. Davis's obvious and documented physical and mental health needs, Defendant Townsend-Vickers failed to conduct a proper intake, assessment and plan, or otherwise coordinate appropriate medical care.

### *March 18, 2023: Ms. Davis's Clothes, Blanket, and Hair Were Soiled from Diarrhea and Required Housing In a New Cell*

4.24     Later that afternoon, during the PES evaluation, Defendant Irina King, M.D. observed that Ms. Davis had diarrhea and that she complained of feeling unwell:

> **Progress Note**
> **Irina King, MD at 3/18/2023 12:46 PM**
>     Status: Signed
>
> During the PES evaluation,the pt was observed to have diarrhea and complained of feeling unwell. RN was notified. The pt was is scheduled to have VS bid x 3 d and PDL bid x 2 d. Will cont to monitor

4.25     Defendant King further noted Ms. Davis's "severe diarrhea" along with the diagnosis of "diarrhea, unspecified type." Defendant King ordered Pedialyte two times a day, vital signs three times a day, prescription drug administration two times a day, and continued

COMPLAINT - 12

monitoring. King County Correctional Facility staff and the named defendants failed to follow these orders for the duration of Ms. Davis's stay in custody.

4.26    Defendant King saw Ms. Davis an hour or so later. Defendant King wrote, "[s]ince it is unlikely she has been compliant [with her] meds OOJ [out of jail], will start her on Haldol 10 mg instead of 30mg." Defendant King "will order monitoring labs . . . and PES eval in place and will be assessed for further mgmt. . . . No further action is indicated at this time . . . will be scheduled for follow-up based on Pt's reported current clinical presentation."

4.27    Defendant King failed to coordinate who would assess Ms. Davis, what monitoring was required, what further management may be needed, or what action to take depending on her clinical presentation. Defendant King failed to evaluate Ms. Davis for the underlying medical condition of "severe diarrhea" or to create a treatment plan to monitor Ms. Davis's hypokalemia.

4.28    Ms. Davis's ultimate psychiatric diagnosis was "bipolar affective disorder, currently manic, moderate."

4.29    Upon information and belief, Ms. Davis received no psychiatric or mood stabilizing medication for the duration of her time in custody before her untimely death.

4.30    Defendant Krystal Pope, PhD saw Ms. Davis a few hours later for a psychiatric evaluation. Ms. Davis was unable to focus during the consult, smelled of feces, complained of diarrhea and stomach pain, and not being able to get up to shower:

> **Subjective**:
> Patient is a 58 year old female that was booked into the facility on 03/17/2023. Pt observed huddled under her blanket, face not visible, but spoke to PES from this position. PES stated purpose of visit and limits of confidentiality. The smell of feces was strong, with PT's soiled clothes on the floor, diarrhea appearing substance on the floor, and PT's blanket soiled in part. PT reported she has been "pooping all night". She endorsed stomach pain through the night but "not now" and has been able to eat and drink some. She requested a shower and clean clothes. PES inquired why when she was offered a shower earlier she didn't come out, PT replied "I just couldn't get up then." PT unable to focus on full interview at this time, will address medical needs and then re-assess. PT denied SI.

4.31    Defendant Pope noted that Ms. Davis's manic and psychotic features at booking, as seen on this date, were historically stabilized with medication after a month in custody in the psychiatric unit.

COMPLAINT - 13

4.32    Defendant Pope characterized Ms. Davis as being "physically ill (lethargy, diarrhea, stomach pains)" and noted that her medical condition needed to be assessed and stabilized before a more thorough psychiatric evaluation could be completed. This was never done. Defendant Pope failed to coordinate and provide appropriate health care for Ms. Davis despite her obvious and documented medical and mental health needs.

4.33    At 11:12pm, Defendant Gabriela Diebate, RN took Ms. Davis's vital signs, which were still on the lower end. This should have been used as a baseline for future care. Although her vital signs were ordered to be taken 3 times a day every day, this was the last time her vitals were checked until her death three days later.

4.34    Defendant Diebate noted that Ms. Davis had "feces all over her body, including hair. Inmate showered, received clean uniform, and was placed in a clean cell." Defendant Diebate claimed that Ms. Davis "refused" her 2100-hour medications. Defendant Diebate failed to evaluate Ms. Davis for competency to be able to "refuse." Defendant Diebate failed to escalate care despite Ms. Davis's deteriorating condition.

4.35    On this day, and through Ms. Davis's death, there is no mention in the records that Ms. Davis's care was discussed with a provider or anything to indicate that Ms. Davis would see a medical provider (physician's assistant or physician).

### March 19, 2023: Ms. Davis Continues to Suffer from Diarrhea, and Now Vomit, Without Proper Medical Intervention

4.36    On March 19, 2023, Defendant Carolyn Clark, RN noted in the medical chart that Ms. Davis refused her morning and afternoon medications. She acknowledged that Ms. Davis's alleged refusal began the previous day.

4.37    Defendant Clark failed to evaluate Ms. Davis for competency to be able to "refuse." Instead of seeking input from a mid-level provider or physician since Ms. Davis was documented to be in "active psychosis," she wrote, "Nursing will continue to offer meds as ordered." During both visits, Ms. Davis was lying on her bunk with her head covered.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.38    This is the first of many times when the named defendants, sworn staff and medical staff, failed in their wellness checks. It is insufficient to conduct cell checks or medical rounds without seeing someone's face. King County Corrections Facility staff went days without seeing Ms. Davis's face.

4.39    At 9:05pm, Defendant Pope saw Ms. Davis for a "brief PES FU (follow up)" evaluation. She noted Ms. Davis's complaints of vomit, continued diarrhea, soiled clothing, soiled blanket, and being withdrawn:

> **Progress Note**
> Krystal Pope, PhD at 3/19/2023  9:05 PM
> Status: Signed
>
> PT seen for brief PES FU today, as just had intake yesterday. Still covered, reporting vomit and diarrhea. Soiled clothes on floor, and blanket looked wet but no overwhelming smell of feces. She never uncovered her head but said she wanted new clothes. I got all new linens and blanket, but she wouldn't get up to swap, so I couldn't give them to her. She told me "I'm resting" then as I encouraged the exchange, "go away". She did ask for Gatorade. Hopefully nursing can assess her again. She again denied opiate use.  No over psychotic symptoms, just very withdrawn.
> PT will be seen by Psych Provider this week. PES FU next week.
>
> Electronically signed by Krystal Pope, PhD at 3/19/2023 9:07 PM

4.40    Defendant Pope wrote, "Hopefully nursing can assess her again." Hope is insufficient. Defendant Pope had a duty to coordinate proper medical care given her psychiatric evaluation, especially since the initial PES evaluation indicated the need to stabilize her physical illness before an in-depth psychiatric analysis could be completed. She failed to do so.

4.41    Defendant Daid Vdovin, RN noted in the medical record that Ms. Davis "refused" her evening medications and did not give a reason for the refusal.

4.42    Defendant Vdovin failed to evaluate Ms. Davis for competency to be able to "refuse." Defendant Vdovin failed to escalate care despite Ms. Davis's deteriorating condition and the knowledge that her vitals had not been taken since the day of her booking.

### March 20, 2023: Ms. Davis Continued to Have Observable Diarrhea and Required a New Clean Cell, Again

4.43    Defendant Scott Ryan, LMHC communicated with DCR (Designated Crisis Responders), who requested a two-hour hold should Ms. Davis be called for release.  DCR and

COMPLAINT - 15

ITA (Involuntary Treatment Act) are typically reserved for severely mentally ill people and those who pose an immediate threat to themselves or others.

4.44    Post-mortem telephone calls to Ms. Davis's DCR Supervisor included comments that Ms. Davis "had been 'not at baseline,' and there had been 'concerns.'"

4.45    Defendant Nicole McBride, RN noted that Ms. Davis "declined all other nursing care and 0900 meds" but accepted Pedialyte.

4.46    Ms. Davis had to be moved to a new cell, again, with clean linens and a blanket. Defendant McBride described Ms. Davis as "disheveled" and diagnosed her with "diarrhea, unspecified.

4.47    Defendant McBride failed to evaluate Ms. Davis for competency to be able to "refuse." Although Ms. Davis had persistent diarrhea and vomiting for three (3) days with documented hypokalemia, and alleged "refusal" for baseline vitals since booking, Defendant McBride failed to escalate care despite Ms. Davis's deteriorating condition.

4.48    Defendant Thi Tran, RN noted that Ms. Davis "refused 1500 medications and 2100 medications" and "refused vitals." Ms. Davis was laying on her bunk, with a smock covering her head, and declared that she was naked. Ms. Davis declined to put her jail uniform on.

4.49    King County Correctional Facility staff found it to be "common for [Ms. Davis] to be nude while incarcerated" so they failed to investigate why she was naked and presumed it was typical without communicating with Ms. Davis or evaluating her mental or physical condition. King County Correctional Facility staff allowed Ms. Davis to further deteriorate without even attempting to see her face, as it remained covered with her smock.

4.50    Defendant Tran failed to evaluate Ms. Davis for competency to be able to "refuse." Although Ms. Davis had persistent diarrhea and vomiting for three (3) days with documented hypokalemia, and alleged "refusal" for baseline vitals since booking, Defendant Tran failed to escalate care despite Ms. Davis's deteriorating condition.

4.51    Defendant corrections officer, F/N/U (First Name Unknown) Sablan, conducted a cell check in the early morning hours. Upon information and belief, Ms. Davis's face remained

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

covered, obscured, or otherwise not visible. Upon information and belief, Ms. Davis continued to suffer from persistent vomiting and diarrhea. Despite Ms. Davis being nude and her deteriorating condition, Defendant Sablan failed to summon appropriate medical and mental health care.

4.52    Defendant corrections officer, Alain Santos, conducted a cell check for Ms. Davis multiple times. He saw her in the early morning hours and just before her death. Defendant Santos claimed to have seen Ms. Davis breathing even though "her face was obscured by the toilet" and she was "curled up in a fetal position" and naked.

4.53    Defendant Santos failed to properly ensure Ms. Davis's safety and well-being, and continued with his cell checks for other incarcerated individuals despite Ms. Davis's serious medical and mental health needs. Upon information and belief, Ms. Davis continued to suffer from persistent vomiting and diarrhea. Even though Ms. Davis was nude and her deteriorating condition was obvious, Defendant Sablan failed to summon appropriate medical and mental health care.

4.54    The corrections officers conduct cell checks to ensure the safety and well-being of the incarcerated population every hour, at minimum in general population. It remains to be determined how often Ms. Davis was supposed to be checked on given her housing in the psychiatric unit and a "yellow" inmate. Regardless, it is jail procedure 101 to contact medical staff when an inmate is vomiting or having diarrhea, as this is an obvious sign of physical distress, especially when the inmate's clothing, blanket, and cell have become unsanitary (multiple times).

4.55    Defendants Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond, Bajra, and Echols failed to conduct adequate cell checks and coordinate appropriate medical care for Ms. Davis's obvious and serious medical needs.

4.56    Throughout Ms. Davis's incarceration, defendant corrections officers Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond, Bajra, and Echols failed to summon appropriate medical care despite observing Ms. Davis's persistent vomiting and severe diarrhea. Defendant corrections officers recognized these obvious physical signs of distress, along with her lethargy

COMPLAINT - 17

1  and withdrawnness, and did nothing. Defendant corrections officers permitted Ms. Davis to remain

2  nude and with her face obscured and/or not visible during their cell checks without properly

3  ensuring her health and safety.

### March 21, 2023: Ms. Davis's Days of Dehydration Triggered a Heart Condition, a
### Foreseeable Consequence for Failing to Treat Electrolyte Imbalance

6      4.57    On March 21, 2023, Defendant Robert Heberling entered Ms. Davis's cell because

7  she was unresponsive.

8      4.58    Ms. Davis was nude. Defendants observed vomit on her blanket, vomit where her

9  head was laying, and vomit around her mouth.

10      4.59    Ms. Davis had been deceased for some time before she was found unresponsive.

11  Ms. Davis's fingers were hard to uncurl to place the pulse oximeter, her mouth was rigid causing

12  difficulty to insert the suction catheter, she was pale, blue, cold, and some parts of her body were

13  yellow as if jaundiced.

14      4.60    Medical first responders observed Ms. Davis "possibly being down for a little while

15  prior to CPR," and her "end tidal being pretty low [indicating] that [she was] dead for a little bit

16  of time."

17      4.61    As a result of the events described above, on March 21, 2023, after days of torture

18  and misery, Ms. Davis died from acute dehydration (from untreated diarrhea and vomiting) and

19  electrolyte imbalance from her hypokalemia, triggering Arrhythmogenic Right Ventricular

20  Dysplasia (ARVD).

21      4.62    Ms. Davis's death was preventable. Her pain and suffering was foreseeable. The

22  named defendants, medical staff and corrections staff, were responsible for her well-being ignored

23  and multiple signs of medical and mental distress for days, violating both their ethical and legal

24  obligations to provide humane and competent care.

25      4.63    Post-mortem vitreous fluid reports indicate fluid loss, acute dehydration, electrolyte

26  imbalances, and likely renal disfunction and metabolic disturbances. These post-mortem findings

27  indicate significant physiological stress and trauma prior to Ms. Davis's death.

COMPLAINT - 18

1  *King County Correctional Facility Has a Long-Standing Pattern of Failing to Provide*

2  *Adequate Medical Care*

3      4.64    King County has long been criticized for its poor conditions and inadequate medical

4  and mental healthcare in its jail. In 1989, three years after King County Corrections Facility

5  opened, the ACLU of Washington sued King County to improve medical care, among other issues.

6  The case settled in 1998 in what would become known as the "Hammer Agreement." King County

7  pledged to improve the jail, such as ensuring adequate medical and mental health care and other

8  behavioral health challenges, remedying overcrowding, preventing inadequate staffing, and

9  improving overall jail conditions. The County failed to meet its pledge.

10     4.65    King County Correctional Facility has been on notice of its deficiencies in failing

11  to provide adequate health care for incarcerated individuals' mental health and medical issues for

12  years, if not decades.

13     4.66    Mr. Timothy Jones  was booked into King County Corrections Facility on April 9,

14  2012. Mr. Jones died a week later because jail staff failed to timely dispense his epilepsy

15  medication.

16     4.67    Ms. Heidi Kay Carver was booked into King County Corrections Facility on

17  September 18, 2012.  During the booking, King County Corrections Facility staff determined that

18  Ms. Carver exhibited signs of withdrawal, and they noted she had previous mental health diagnosis

19  with suicide attempts.  Ms. Carver's detoxification symptoms were allegedly disturbing others in

20  custody thereby prompting her removal and placement into isolation. Ms. Carver allegedly refused

21  her medications. On September 20, 2012, Ms. Carver was found unresponsive in her cell and in

22  medical distress. Ms. Carver was pronounced dead six days later.

23     4.68    Ms. Brittania Kieyanna Allen presented with flu-like symptoms and symptoms

24  from withdrawal and detoxification at King County Corrections Facility on January 25, 2013. Ms.

25  Allen was found dead in her cell six (6) days later.

26     4.69    Mr. Nathan Zambryski was booked into King County Corrections Facility on May

27  3, 2015 with known risks of alcohol withdrawal seizure and/or alcohol withdrawal syndrome. King

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

County Corrections Facility medical providers failed to provide timely or adequate monitoring and treatment for Mr. Zambryski's obvious medical needs. He died on May 4, 2015.

4.70    Ms. Rose Simonsen was booked into King County Corrections Facility on August 24, 2015, after treating at Harborview Medical Center. Three days later, she was found unresponsive. Upon information and belief, Ms. Simonsen suffered from denial of adequate medical care leading to cardiac issues resulting in her death. The medical examiner found her cause of death to be an anoxic brain injury (deprivation of oxygen to the brain) post cardiopulmonary arrest.

4.71    In August 2022, King County through Dwight Dively, Chief Operating Officer and Director, Performance, Strategy and Budget for King County, sent the ACLU of Washington a letter admitting that many incarcerated individuals were not receiving medical care, mental health care, or follow-up treatment, likely in breach of the Hammer Agreement.

4.72    In Februrary of 2023, the ACLU of Washington filed a lawsuit against King County alleging violations of the Hammer Agreement related to jail conditions and access to medical care, among other issues. (ACLU Washington, *Hammer v. King County - Summer*, last viewed February 11, 2026, https://www.aclu-wa.org/cases/hammer-v-king-county-0/).

4.73    Real Change News recently published an article about Ms. Angie Davis's incarceration in early 2021 after prolonged mental health crises. Ms. Angie Davis described her incarceration as follows:

> Davis said she was extremely disoriented when she arrived at the jail. She had presumed police would take her back to the MultiCare mental health hospital. She was locked in a cell alone without being able to access showers, commissary or a phone throughout her incarceration.

> During her time in the jail cell, Davis said she wasn't served dinner and had water cut off at night. She endured hunger, dehydration and was fearful for her life. She lost track of time, spending her 27th birthday in jail.

> "If I wasn't bailed out, I know I wasn't going to make it to that next birthday," Davis said.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

. . .

Jail health records obtained by Davis raise questions about her time at KCCF. One note filed on March 17 by a medical officer at the jail describes a conversation with Davis in which Davis said she unaware of where she was and thought she was being held at City Hall.

. . .

The jail health records indicate Davis was placed in "yellow" restrictive housing, which is reserved for people with serious mental illnesses and limi[t]s the types of commissary items they can receive. When she was screened, KCCF health officers diagnosed her "unspecified psychosis" and prescribed her an antipsychotic drug.

Davis said she was mistreated due to her poor mental health state.

"I probably wasn't really sleeping that much," Davis said. "I was kind of grieving, like [getting] no sleep. But I know that a psychosis doesn't constitute stupid. They were taking advantage of me. I was aware that I was being mistreated."

. . .

Despite efforts at reform, advocates say that fundamental issues with the jail remain, which make it a toxic and traumatic place for people held inside.

"The King County jail's problems are not new," said Jazmyn Clark, the smart justice program director at the ACLU of Washington. "These are deeply rooted, systemic issues."

(Oron, Guy, REAL CHANGE NEWS, *Eight days incarcerated at the King County jail*, December 11, 2025, last viewed February 11, 2026, https://www.realchangenews.org/news/2025/12/11/eight-days-incarcerated-king-county-jail).

4.74    As reported in the article, "[s]ince it opened in 1986, the King County Correctional Facility in downtown Seattle, commonly called the King County Jail, has faced repeated accusations of poor conditions and treatment of incarcerated people. In 2025, four people have died while in custody at the jail."

COMPLAINT - 21

4.75    As reported in the article, King County Correctional Facility is one of the deadliest jails in King County:



4.76    There is a campaign to shut down King County Correctional Facility because the number of in-custody deaths rival "even the most deadly federal prisons." (Shut Down KCJ, "*Shut Down The Deadly King County Jail,*" last viewed February 11, 2026, https://www.shutdownkcj.com/).

## V.    CLAIMS

**FIRST CAUSE OF ACTION**
**Deliberate Indifference to a Serious Medical Need**
**(42 U.S.C. § 1983)**
**Against Defendants Townsend-Vickers, King, Pope, Diebate, Clark, Vdovin, Scott, Mcbride, Tran, Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond, Bajra, and Echols**

5.1    Plaintiff Estate realleges and incorporates by reference each allegation as though set forth herein in full.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

5.2    The facts set out above constitute the denial of adequate medical care under the Fourteenth Amendment. Defendants Townsend-Vickers, King, Pope, Diebate, Clark, Vdovin, Scott, Mcbride, Tran, Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond, Bajra, and Echols that DeAnna Davis faced a serious medical need.

5.3    Defendants Townsend-Vickers, King, Pope, Diebate, Clark, Vdovin, Scott, Mcbride, Tran, Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond, Bajra, and Echols were deliberately indifference to her serious medical need regarding her hypokalemia, severe diarrhea, vomiting, known electrolyte imbalance, severe psychosis, and failing to summon appropriate medical or mental health care, despite DeAnna Davis's deterioration and need for healthcare. Defendants failed to appropriately monitor DeAnna Davis, conduct safety cell checks, and coordinate with medical staff to treat her. Ultimately, Defendants knew of and disregarded DeAnna Davis's serious medical needs by failing to take reasonable measures to address it.

5.4    Defendants' actions and/or inactions caused harm to DeAnna Davis.

5.5    The conduct and failures of Defendants Townsend-Vickers, King, Pope, Diebate, Clark, Vdovin, Scott, Mcbride, Tran, Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond, Bajra, and Echols caused DeAnna Davis to be deprived of her civil rights protected by the Fourteenth Amendment of the United States Constitution, and that conduct legally, proximately, foreseeably, and actually caused DeAnna Davis to suffer physical injuries, emotional distress, pre-death pain and suffering, loss of life, and further economic and general damages in an amount to be proven at the time of trial, for which Plaintiff Estate is entitled to pursue in this action.

5.6    The conduct and failures of Defendants alleged herein was malicious, oppressive, or in deliberate or reckless disregard of DeAnna Davis's constitutionally protected rights, justifying an award of punitive damages against Defendants Townsend-Vickers, King, Pope,

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1    Diebate, Clark, Vdovin, Scott, Mcbride, Tran, Santos, Sablan, Herberling, Stubbs, Hardt, Nam,

2    Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen,

3    Edmond, Bajra, and Echols an amount to be proven at trial in order to deter Defendants and others

4    from engaging in similar conduct and to make an example through monetary punishment, for

5    which Plaintiff Estate is entitled to pursue in this action.

6         5.7    Plaintiff Estate is also entitled to recover its reasonable attorney fees and costs

7    incurred in bringing this suit.

**SECOND CAUSE OF ACTION**
**Violation of the Fourteenth Amendment Right of Association**
**(42 U.S.C. § 1983)**
**Against Defendants Townsend-Vickers, King, Pope, Diebate, Clark, Vdovin, Scott,**
**Mcbride, Tran, Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng,**
**Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond,**
**Bajra, and Echols**

13         5.8    Plaintiffs Whitney Bolton and Jane Harrell re-allege and incorporate by reference

14    each allegation as though set forth herein in full.

15         5.9    Defendants deprived DeAnna Davis of her civil rights that are protected under the

16    Fourteenth Amendment of the United States Constitution, and that legally, proximately,

17    foreseeably, and actually caused physical injuries, emotional distress, pre-death pain and suffering,

18    and the loss of life of DeAnna Davis.

19         5.10    Decedent's daughters, Whitney Bolton and Jane Harrell, shared a close relationship

20    and special bond with their mother, DeAnna Davis. Ms. Bolton and Ms. Harrell shared deep

21    attachments, and commitments emblematic of a close familial relationship. The deprivation of

22    these rights has destroyed the Constitutional right of decedent's daughters, Ms. Bolton and Ms.

23    Harrell, to familial love, companionship, comfort, care, assistance, protection, affection, society,

24    and moral support of their mother, which is protected by the substantive due process clause of the

25    Fourteenth Amendment.

26         5.11    The conduct of Defendants alleged herein was malicious, oppressive, or in

27    deliberate or reckless disregard of Ms. Bolton and Ms. Harrell's constitutionally protected rights,

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

justifying an award of punitive damages against Defendants Townsend-Vickers, King, Pope, Diebate, Clark, Vdovin, Scott, Mcbride, Tran, Santos, Sablan, Herberling, Stubbs, Hardt, Nam, Mead, Blood, Heng, Hollinger, Sprague, Mai, Richmond, Nua, Putnam, Giner, Duloglo, Nguyen, Edmond, Bajra, and Echols in an amount to be proven at trial in order to deter Defendants and others from engaging in similar conduct and to make an example through monetary punishment.

5.12    Plaintiffs Ms. Bolton and Ms. Harrell are also entitled to his reasonable attorney fees and costs incurred in bringing this suit.

### THIRD CAUSE OF ACTION
**Unconstitutional Policy, Practice, or Custom; Failure to Train, Supervise, or Discipline**
**(*Monell v. Dept. of Social Services*)**
**Against King County**

5.13    All Plaintiffs re-allege and incorporate by reference each allegation as though set forth herein in full.

5.14    A moving force causing the violations of the Fourteenth Amendment was the policies, practices, or customs of King County Correctional Facility regarding timely and adequate medical and mental health care, including but not limited to timely consultation and oversight of medical and mental healthcare with licensed providers; monitoring and treatment of obvious medical needs like documented hypokalemia and persistent vomiting and diarrhea; escalating care when appropriate to a mid-level or physician medical provider; sending an inmate outside of the facility for emergent medical care; conducting a competency evaluation to determine if an actively psychotic inmate with extensive and severe mental health diagnoses is capable of "refusing" treatment; and timely and proper safety cell checks of jail inmates, among others.

5.15    A moving force causing the violations of the Fourteenth Amendment was King County's failure to maintain and provide adequate training, supervision, and discipline to its staff regarding timely and adequate medical and mental health care, including but not limited to timely consultation and oversight of medical and mental healthcare with licensed providers; monitoring and treatment of obvious medical needs like documented hypokalemia and persistent vomiting and diarrhea; escalating care when appropriate to a mid-level or physician medical provider; sending

COMPLAINT - 25

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

an inmate outside of the facility for emergent medical care; conducting a competency evaluation to determine if an actively psychotic inmate with extensive and severe mental health diagnoses is capable of "refusing" treatment; and timely and proper safety cell checks of jail inmates, among others.

5.16    The policymaking officials responsible for King County Correctional Facility were aware of and had notice of these deficiencies and with deliberate indifference failed to correct it.

5.17    The conduct and failures of King County caused DeAnna Davis to be deprived of her civil rights protected by the Fourteenth Amendment of the United States Constitution, and that conduct legally, proximately, foreseeably, and actually caused DeAnna Davis to suffer physical injuries, emotional distress, pre-death pain and suffering, loss of life, and further economic and general damages in an amount to be proven at the time of trial, for which all Plaintiffs are entitled to pursue in this action.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief against Defendants as follows:

6.1    Trial to a jury.

6.2    A declaration that the individual Defendants Lisa Townsend-Vickers, Irina King, Krystal Pope, Gabriela Diebate, Carolyn Clark, David Vdovin, Ryan Scott, Nicole Mcbride, Thi Tran, Alain Santos, F/N/U Sablan, Robert Herberling, Todd Stubbs, David Hardt, Hannah Nam, Tim Mead, Cameron Blood, Paul Heng, Brandon Hollinger, Roy Sprague, Gregory Mai, Fintan Richmond, Travia Nua, Eric Putnam, Christopher Giner, Elene Duloglo, Thu Nguyen, Jason Edmond, Rob Bajra, and Dennis Echols violated Plaintiffs' civil rights.

6.3    A declaration that Defendant King County's policies, practices, customs, and usages caused the individual Defendants' violations of DeAnna Davis's civil rights.

6.4    Damages for emotional distress, physical harm, and loss of association and other general and special damages.

6.5    Punitive damages against the individual Defendants Lisa Townsend-Vickers, Irina King, Krystal Pope, Gabriela Diebate, Carolyn Clark, David Vdovin, Ryan Scott, Nicole Mcbride,

COMPLAINT - 26

Thi Tran, Alain Santos, F/N/U Sablan, Robert Herberling, Todd Stubbs, David Hardt, Hannah Nam, Tim Mead, Cameron Blood, Paul Heng, Brandon Hollinger, Roy Sprague, Gregory Mai, Fintan Richmond, Travia Nua, Eric Putnam, Christopher Giner, Elene Duloglo, Thu Nguyen, Jason Edmond, Rob Bajra, and Dennis Echols.

      6.6     Pre-judgment and post-judgment interest on any amounts awarded.

      6.7     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law.

      6.8     Other declaratory and injunctive relief as the Court deems just and equitable; and

      6.9     The right to conform the pleadings to the evidence presented.

Respectfully submitted,

DATED this 23rd day of February, 2026.

**MacDONALD HOAGUE & BAYLESS**

By: /s/ Braden Pence
Braden Pence, WSBA #43495
BradenP@mhb.com

***Attorneys for Plaintiffs***

**MacDONALD HOAGUE & BAYLESS**

By: /s/ Lauren I. Freidenberg-McBride
Lauren I. Freidenberg-McBride,
WSBA #59145
LaurenF@mhb.com

***Attorneys for Plaintiffs***

**MacDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961